Vernon BAGBY, Petitioner,

v.

Robert KUHLMAN, Respondent.

No. 86 Civ. 6358(PNL).

United States District Court,
S.D. New York.

July 13, 1990.

David L. Lewis, Lewis & Fiore, New York City, for petitioner.

Joseph Latino, Asst. Dist. Atty., White Plains, N.Y., for respondent.

## OPINION AND ORDER

LEVAL, District Judge.

Vernon Bagby ("Petitioner") petitions for a writ of habeas corpus. Petitioner was convicted on October 31, 1979, at a bench trial, of possession of a controlled substance in the First, Third, Fifth, and Eighth Degrees, and two counts of criminal use of drug paraphernalia, before the Supreme Court of Westchester County. Petitioner was sentenced to a term of fifteen years.[1]

### Background

On December 26, 1978, police detectives conducted surveillance of the apartment building located at 127 South 12th Avenue, in Mount Vernon, New York, in which petitioner's ex-wife, Sandra Mann [now Shannon] resided. They observed a car which met the description of petitioner's drive by, and then, a short time later, saw petitioner standing at the door of the building. The detectives announced their presence. Petitioner then fled the scene. The detectives gave chase but did not catch petitioner.

The detectives then proceeded to execute a search warrant at Ms. Mann Shannon's unoccupied apartment. After a thorough search, they seized certain amounts of cocaine, amphetamines, diazepam, and drug paraphernalia.

Petitioner was charged with several counts of possession of controlled substances, including cocaine and amphetamines, and criminal use of drug paraphernalia. The main issue at trial, which took place during the month of October, 1979, was whether petitioner had constructive possession of the seized drugs and paraphernalia.

At trial, the court heard testimony from several of the detectives who participated in the surveillance and search of 127 South 12th Avenue on the issue of petitioner's access to the apartment. Detectives Alfred DiMaio and Nicholas LaSorsa testified that they observed petitioner standing near the front door with a key in his hand. (A170; A243) Neither was able to say whether the key appeared to be a house key or a car key. (A197; A243) Mount Vernon Police Lieutenant Joseph Campbell also testified to seeing a large key in petitioner's hand, and stated that because of its size, he believed the key to be a house key. (A365)

Detective James Garcia testified that upon entering the apartment, the detectives found a note addressed to petitioner on the kitchen table inside the apartment.[2] (A28)

Leroy Matthews, the U.S. Postal Service carrier for the neighborhood, also testified that he delivered mail addressed to Vernon Bagby to 127 South 12th Avenue during the early fall of 1978, but that he stopped delivering such mail prior to Christmas, 1978. (Tr. at 425.)

The government's main witness on the issue of petitioner's access to the apartment was petitioner's ex-wife Ms. Mann Shannon, who testified pursuant to subpoena. She testified on direct that petitioner lived in the apartment during December, 1978, when the search took place, and that he had a key to the house.[3] (A392)

Ms. Mann Shannon was cross-examined fully by the defense counsel, Mr. Howard Rukeyser. On cross, she again stated that petitioner had keys to the outer door of the house and to the door of the apartment. (A397) She was cross-examined as to her divorce from petitioner. Specifically, she was cross-examined with an affidavit she submitted to divorce court, which stated that Bagby had not lived with her for over a year prior to May 1979. Nonetheless, she did not change her testimony. Instead,

---

1. Petitioner's sentence was commuted by the governor to a term of 8⅓ years to life.

2. None of the detectives testified that the door to the apartment was locked at the time of the search. However, Detective Garcia did testify on direct that the detectives forced the door to the apartment open with their shoulder. (A28)

3. Ms. Mann also testified that she had received a number of threats from petitioner concerning her trial testimony within the few weeks prior to trial. (A395). She testified that he threatened that she and her family would be hurt, and that he would arrange for it even if he went to jail. (A396)

she replied that she had been asked to state "approximately how long" it had been since petitioner lived with her. (A409) The defense questioned her on her history of bringing criminal charges against petitioner from time to time and then withdrawing them, and her problems with petitioner in Family Court, and on the note left to petitioner, which she testified had been "stuck in the door," not left on the kitchen table. (A416–18)

The day after Ms. Mann Shannon concluded her testimony, defense counsel advised the trial judge that Ms. Mann Shannon wished to recant her testimony, and that she was going to be recalled as a defense witness. The judge appointed counsel for her. The Assistant District Attorney stated that in addition to her previous sworn testimony, he had a prior statement sworn to by Ms. Mann Shannon, and that if the new testimony was materially different, there would be a "good likelihood of a perjury prosecution." (A464) He provided Ms. Mann Shannon's counsel with a copy of the sworn statement.

In that statement, made a few days prior to trial, Ms. Mann Shannon indicated that petitioner had had regular access to the apartment at the time the drugs and drug paraphernalia were seized. She stated that petitioner had lived with her and that he had a key to the apartment.[4]

A few days later, Ms. Mann Shannon again took the stand, this time as a defense witness. Her entire testimony at that time consisted of the following:

MR. RUKEYSER: Miss Mann, you recall you testified previously in this case, I think last Wednesday, do you remember that?

MS. MANN: Yes.

Q: At that time, I believe, that you testified that during the month of December, 1978, up until December 26th, that your husband, the defendant had been living with you at 127 South 12th Avenue in Mt. Vernon, was that a correct statement?

A: I take the Fifth Amendment.

THE COURT: I did not hear the answer.

THE WITNESS: I take the Fifth Amendment.

Q: Was the defendant living with you during December of 1978?

A: I take the Fifth Amendment.

Q: Did the defendant have keys to the outer door of the premises at 127 South 12th?

A: No, he did not.

(A473)

The judge struck the last question and answer, after the witness's counsel stated that the witness did wish to invoke the Fifth Amendment, and upon invoking it, she had expected not to be questioned further. (A476) The court then had a conference with the witness *in camera*. She took the stand again and stated that she intended to invoke her Fifth Amendment right on each and every question to be propounded to her. She was excused by the trial judge. (A482) The defense counsel then stated that he would have asked the witness, had she not been excused, whether or not she had been threatened by Detective Garcia to testify against the defendant, whether the defendant had a key to her apartment, and whether the defendant had threatened her. (A486)

Petitioner then took the stand in his own behalf. He testified that he did not live at 127 South 12th Avenue, although he visited there fairly often, and that he did not have a key to the outside door of the house or to the apartment. (A506, 507) He testified that on the evening in question, he believed that Ms. Mann Shannon would either be at her apartment, or at her mother's house across the street. (A565) He denied threatening Ms. Mann Shannon.

The trial judge found petitioner guilty of several counts of possession of a controlled substance and criminal use of drug para-

---

4. She also indicated that she had received threats from the petitioner with regard to any trial testimony she might give—— "that he would kill [her] if [she said] anything against him that might hurt him," and that she was afraid of him. Appendix at 17–20. ("Appendix" will hereinafter be designated as "A".)

phernalia on October 31, 1979. The court stated that the primary issue in the case was whether the defendant was in joint possession of the apartment at 127 South 12th Avenue, and whether he had dominion and control over those premises. The court concluded that the defendant had had such dominion and control, and listed the evidence he had considered:

"(a) Police testimony regarding defendant's entrance with what appeared to be a key;

(b) The defendant's flight from the area upon sighting the police, one or more of which he knew;

(c) Sandra Mann's testimony that the defendant lived in the premises for a period before Christmas;

(d) The note found in the apartment, addressed to Vernon;

(e) The testimony of the postal employee regarding the delivery of mail to the defendant, addressed at the apartment; and, last,

(f) The defendant's admission with regard to a conversation had with one Vincent Carilli prior to 12–26–78 regarding the subject of drugs." Verdict, October 31, 1979, at 7.

The court found the defendant's description of events incredible, and convicted the defendant.

Petitioner's conviction was reversed by the Appellate Division, 100 A.D.2d 625, 473 N.Y.S.2d 588 (2d Dept.1984, and subsequently reinstated by the New York Court of Appeals, 65 N.Y.2d 410, 492 N.Y.S.2d 562, 482 N.E.2d 41 (1985)). A sentence of fifteen years to life imprisonment was subsequently commuted to a term of eight and one-third years to life.

Petitioner makes five arguments in support of a grant of a writ of habeas corpus. First, he argues that his due process right to a fair trial was denied, because he could not confront Ms. Mann Shannon and test the truth of her testimony when she invoked her privilege against self-incrimination. Petitioner assigns as error the failure to strike her earlier testimony. Second, he argues that he was deprived of a full and fair opportunity to litigate Fourth Amendment claims concerning the search warrant. Third, he argues that the defense was prevented from cross-examining the police officer on the gender of the confidential informant. Fourth, he argues that the search warrant was not supported by probable cause. Fifth, he argues that he was released on bail in violation of N.Y. C.P.L. § 530 and should be given credit towards his sentence for the period he was out on bail.[5]

This court held hearings on petitioner's first claim, that his due process rights were violated by denial of his right to confront a witness against him. Defense counsel Rukeyser testified that the day after her testimony at trial, Ms. Mann came to his office, unbidden by him, and informed him that she had lied on the stand, and wished to recant her testimony. Rukeyser testified that Ms. Mann Shannon told him that she had lied on the stand because Detective Garcia had threatened her with a drug prosecution if she did not implicate petitioner in her testimony. (Tr. at 7.) Rukeyser stated that she told him that she had not been threatened by petitioner. (Tr. at 17.) Finally, Rukeyser testified that Ms. Mann Shannon took the stand as a defense witness voluntarily, not pursuant to subpoena. (Tr. at 25.)

Ms. Mann Shannon also testified at the hearing. Her testimony contradicted that of Mr. Rukeyser in certain respects. She testified that her testimony as a defense witness had been pursuant to subpoena, not voluntary. (Oct. 5, 1988, Tr. at 7, 40.) She also testified that she did not remember speaking to Mr. Rukeyser subsequent to her original testimony at trial, although she did recall speaking to petitioner. (Oct. 5, 1988, Tr. at 39–40.)

In response to questions asked by the court, Ms. Mann Shannon stated that she could not recall whether petitioner had keys to the apartment in December, 1978, or whether he had lived there. She did state that she "did not tell deliberate lies" while under oath at the trial. (Tr. at 39.)

---

**5.** Petitioner has withdrawn his claim of ineffective assistance of counsel. Reply brief at 2.

She was asked whether she had been threatened by Detective Garcia. She recalled that he had come to her workplace and asked her how the drugs got to her apartment. (Tr. at 14.) She also testified that she was not afraid of the Assistant District Attorney. (Tr. at 22.)

The witness was asked several times whether petitioner had threatened her and whether she was afraid of petitioner. She did not answer for long periods of time, and at one point, began crying on the witness stand. (Tr. at 46.)

## Discussion

### I. The Confrontation Clause Claim

■ This case concerns the conflict between a witness's privilege under the Fifth Amendment not to give self-incriminating testimony and a defendant's right under the Sixth Amendment to confront the evidence and the witnesses against him. Petitioner contends that his confrontation clause rights were violated when Sandra Mann Shannon invoked the Fifth Amendment upon being recalled to the stand as a defense witness.[6]

■ The Confrontation Clause guarantees a defendant disclosure of the evidence against him and the opportunity to examine the witnesses testifying against him. Here, the right to confront witnesses is at issue. A defendant is guaranteed the opportunity to demonstrate the lack of credibility, reliability, or truthfulness of the testimony against him. Adequate opportunity for cross-examination is generally considered to effectuate the Confrontation Clause guarantees. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 1110 n. 4, 39 L.Ed.2d 347 (1974). *See also United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 841, 98 L.Ed.2d 951 (1988). *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973).

■ The right to cross-examine a witness, however, is not limitless. A trial judge may impose reasonable limits on cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). For example, a defendant is not entitled to cross-examine a witness on non-core areas of testimony. Nor is a defendant entitled to cross-examination of unlimited duration, even if that cross-examination may touch on relevant topics. *See United States v. Raineri*, 670 F.2d 702 (7th Cir.), *reh'g denied* (1982), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (court's refusal to recall witness for further examination by defendant when she had already undergone complete cross-examination did not violate confrontation clause); *United States v. DeRosa*, 670 F.2d 889 (9th Cir.), *reh'g denied* (1982), *cert. denied*, 459 U.S. 993, 103 S.Ct. 353, 74 L.Ed.2d 391 (same); *United States ex rel. King v. Schubin*, 522 F.2d 527 (2d Cir.) (per curiam), *cert. denied*, 423 U.S. 990, 96 S.Ct. 403, 46 L.Ed.2d 309 (1975). In particular, the right to cross-examine is not a right to a *successful* cross-examination. The defendant may not examine a witness until he gets the answer he wants. The Confrontation Clause includes no guarantee that a prosecution witness "will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion." *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 296, 88 L.Ed.2d 15 (1985) (per curiam).

■ Here, Sandra Mann Shannon was fully cross-examined prior to her recall to the witness stand and her assertion of her Fifth Amendment privileges. Nonetheless, petitioner argues that her failure to be available for further examination—in which she might have recanted her prior testimony—violated his Confrontation Clause rights, and accordingly the wit-

---

**6.** While petitioner has apparently been released from prison, his petition is not moot. Once a habeas petition has been properly filed, the controversy remains live notwithstanding a petitioner's release from custody if the petitioner suffers or will suffer collateral consequences as a result of the conviction. *Carafas v. LaVallee*, 391 U.S. 234, 239–40, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968) (citing 28 U.S.C. § 2243); *Leonard v. Hammond*, 804 F.2d 838 (4th Cir. 1986).

Petitioner will undoubtedly suffer collateral consequences as a result of his narcotics-related conviction, including exposure to enhanced sentencing in the event he is convicted of another crime. Accordingly, the petition is not moot.

ness's entire testimony must be stricken. Petitioner relies on this circuit's ruling in *Klein v. Harris*, 667 F.2d 274 (2d Cir. 1981).[7]

In *Klein v. Harris*, the Second Circuit found a Confrontation Clause violation when a key witness in a criminal trial invoked the Fifth Amendment upon being recalled to the stand by the defense. The witness had been present at the scene of the crime—a stabbing death—and testified on direct that the petitioner had stabbed the victim while the witness held the victim. This was consistent with the witness's report to the police, and the witness was fully cross-examined by the defense.

Shortly thereafter, defense counsel reported to the court that the witness, after the conclusion of his testimony, had approached defense counsel (who was visiting defendant in the same detention area in which the witness was confined) and told defense counsel that he wished to recant his testimony, and admit to the stabbing himself. Counsel was appointed for the witness, and defense counsel called the witness to the stand. The witness admitted speaking to the defense counsel, but invoked the Fifth Amendment in answer to questions about the content of the conversation with defense counsel and the crime itself. The trial judge permitted the assertion of the privilege and did not strike any of the previous testimony.

The Second Circuit granted the habeas petition, concluding that the trial judge had made an error of constitutional magnitude by neither striking the previous testimony nor compelling the witness to testify. The *Klein* court first found a testimonial waiver of the witness' Fifth Amendment privilege.[8] The *Klein* court then concluded that the trial judge should accordingly have compelled the witness to testify, for the witness was not entitled to assert his Fifth Amendment privilege. 667 F.2d at 289. Because the trial judge had not directed the witness to further testify, however, the *Klein* court then found that the refusal of the witness to testify "plainly deprived [the defendant] of an opportunity to test the truth of Rabinowitz's prior testimony," and constituted a violation of the defendant's Confrontation Clause rights. 667 F.2d at 289. The Second Circuit ruled that the trial judge should therefore have stricken all of the witness's testimony. Upon a finding that the Confrontation Clause violation was not harmless, the court granted the habeas petition.

Petitioner contends that just as in *Klein v. Harris*, Ms. Mann Shannon intended to recant, and that her refusal to testify, invoking the Fifth Amendment, deprived the petitioner of his Confrontation Clause rights.

Petitioner also argues that because Ms. Mann Shannon had waived her Fifth Amendment privilege against self-incrimination, the trial judge erred in permitting her to assert that privilege. Instead, he should have directed her to testify, or in the event that she absolutely refused to do so, he should have stricken her previous testimony.

The government argues that petitioner's Confrontation Clause rights were not vio-

---

7. I note that, because Bagby's conviction did not become final until 1985, four years after the *Klein* rule was announced, *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) has no application.

8. The *Klein* court noted that inferring a waiver of the fifth amendment's privilege (which would permit a trial judge to direct a witness to answer certain questions under penalty of contempt) was indicated only in compelling circumstances, such as where a party to the litigation would be prejudiced. The *Klein* court directed the use of a two part test in inferring a waiver—when "(1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with a prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination." 667 F.2d at 287. The second prong of the test could be satisfied when the witness' prior statements were (a) testimonial and (b) "incriminating," directly inculpating the witness. 667 F.2d at 288. In *Klein*, the court found that since the witness had previously testified freely about the circumstances of the crime (inculpating himself), he waived any fifth amendment privilege he might otherwise have been entitled to invoke to avoid testifying concerning the stabbing. 667 F.2d at 289.

lated, for there was no indication that the petitioner lacked an opportunity to test the truth of Ms. Mann Shannon's testimony. Petitioner had a full and fair cross-examination of the witness at trial. Further, the government argues there was no indication that Ms. Mann Shannon genuinely wished to recant; instead, it appears that she was threatened by petitioner.

The government also argues that the trial judge could not have inferred a waiver by Ms. Mann Shannon of her Fifth Amendment privilege because there was no indication that her previous testimony would result in a distorted view of the truth. Accordingly, the trial judge could not have compelled her to testify.

I agree with many of the government's arguments. However, petitioner is correct that this case is on all fours with *Klein v. Harris*. As this court is bound to follow circuit precedent, the petition must be granted. In *Klein*, as in this case, the witness had been fully cross-examined when first called to the stand for the prosecution. Nonetheless, in *Klein* the witness' invocation of the Fifth Amendment upon being recalled by the defendant led the court to conclude that the defendant was unable to test sufficiently the truth of a government witness's testimony and suffered a deprivation of rights under the Confrontation Clause.[9] There is no ground on which to distinguish this case from *Klein*. I am required by the binding precedent of *Klein* to conclude that the trial judge in petitioner's case committed a constitutional error.[10]

Although I am bound to follow the ruling of the Court of Appeals in *Klein v. Harris*, I respectfully suggest that the *Klein* rule goes too far. The *Klein* ruling leaves no allowance for the circumstance here presented where there is substantial reason to doubt the genuineness of the predicted recantation. The *Klein* court ruled essentially that where defense counsel advises of the witness's announced intention to recant and the witness claims the Fifth Amendment privilege upon being recalled to the stand, the court is required to assume that the defendant was deprived of a *bona fide* recantation. The trial judge, according to *Klein*, has no alternative but to override the privilege and compel testimony or to strike the testimony previously given.

In my view, as this case illustrates, the *Klein* ruling failed to appreciate a substantial potential for abuse. Even assuming that a defense lawyer's report to the trial judge of a witness' stated intention to recant should be accepted at face value, it does not necessarily follow that the witness's statement of such intention to the defense lawyer is genuine or means that the earlier incriminating testimony was false. There is, of course, a high risk that the defendant will procure from the witness a statement of intention to recant which is motivated not by falsity of the earlier testimony but either by loyalty or intimidation. Under the *Klein* rule, furthermore, the witness need not actually go through with the recantation to serve the defendant's needs; in fact, she serves the defendant's needs better if she stops short

**9.** Petitioner argues that the witness waived her Fifth Amendment rights and should have been compelled to testify. It is not necessary to address this argument. Whether the witness properly asserted her Fifth Amendment rights is irrelevant to whether the defendant's Confrontation Clause rights would have been violated. The only issue under the confrontation clause is whether the *defendant* had a proper opportunity to test the truth of the witness's testimony.

The government concedes that had Ms. Mann Shannon correctly asserted her Fifth Amendment rights on *cross* and refused to testify further, giving petitioner no opportunity to test the truth of her original direct testimony, petitioner's confrontation clause rights would have been violated. Likewise, this court could find (and does find) that a defendant's confrontation clause rights have been violated notwithstanding the propriety of a witness's assertion of the privilege against self-incrimination.

The propriety of a witness's assertion of the privilege against self-incrimination only bears on the ability of the trial judge to compel the witness to testify—at that point, against the witness's desires. Here, that question is moot. Ms. Mann Shannon was excused from testifying. The only issue is whether her refusal to testify, justified or not, violated the confrontation clause rights of the defendant.

**10.** Nor can it be contended that the error was harmless. Without Sandra Mann Shannon's testimony, the evidence of petitioner's access to the apartment prior to the search was inconclusive.

of a perjurious recantation and simply pleads the Fifth Amendment. Were she to take the stand and recant, the factfinder would be free to disbelieve her recantation. But where she refuses to testify, according to *Klein* the court is required to strike her earlier testimony. She can therefore successfully rescue the defendant without even committing perjury.

The *Klein* ruling distorts both the scope of the right of confrontation and the receptivity of the law to subsequent recantation.

As to confrontation, defendants have a limited right. It is satisfied by an adequate opportunity for cross-examination. Defendants are not entitled to conduct endless cross-examination. *See Delaware v. Van Arsdall; Raineri; DeRosa.* In both *Klein* and this case, the defendants conducted full cross-examination of the inculpatory witness. It was only when the defendant recalled the witness to the stand that the defendant's opportunity to examine was restricted by the witness's plea of the Fifth Amendment.

Secondly, the law characteristically views reports of witness recantation with skepticism, indeed, "with the utmost suspicion." *United States v. DiPaolo*, 835 F.2d 46 (2d Cir.1987) (denying motion for new trial despite submission of recanting affidavit signed by witness). The reasons are clear—among them, a witness may be improperly prevailed upon to change her testimony. Particularly late in a trial, a defendant who sees the prospects of acquittal worsening may be strongly motivated to do whatever he can to avoid conviction. In the case of a motion for new trial under Fed.R.Crim.Pro. 33 based on a witness recantation, courts are specifically instructed to be wary of witness recantations. The court granting such a motion must be satisfied that (1) the testimony recanted was "false and material;" (2) that without the original testimony, the jury would probably have acquitted the defendant, and (3) that the party seeking the new trial was surprised when the false testimony was given or did not know of its falsity until after the trial. *Id.; see also United States v. Massac*, 867 F.2d 174 (3d Cir.1989); *United States v. Page*, 828 F.2d 1476 (10th Cir.), *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987).

In my opinion, the weakness of the *Klein* ruling is in its failure to distinguish between the circumstances where the court finds a high probability that the defendant has been deprived of a genuine recantation by the witness's claim of privilege and the circumstance where, through the artifice of the defendant or the witness or both, the court has been manipulated. I believe that the Court of Appeals should not have *required* the trial judge to strike the earlier testimony, but ought to have allowed discretionary latitude to retain the earlier testimony depending on the perceived likelihood of injustice.[11]

Were I permitted to do so by the rule of the Second Circuit, I would find a high likelihood that Sandra Mann Shannon's announced intention to recant was untrustworthy. There was substantial evidence both at the trial and on the habeas hearing that the witness was afraid of the defendant and that the defendant had hit and threatened the witness.

Further, I would find that the defendant had enjoyed adequate opportunity to cross-examine and that the proffer of the witness's recantation was highly untrustworthy. I would find little reason to doubt the trustworthiness of the witness' earlier incriminating testimony. I would rule on these particular facts that petitioner had failed to show entitlement to a writ of habeas corpus.

Nonetheless, because I read *Klein v. Harris* to require this result, I hereby grant the petition for habeas corpus.[12]

**11.** Factors that might be considered under a flexible rule include the adequacy of the earlier opportunity for cross-examination, the likelihood that the earlier testimony was false, that the witness is in fact disposed to recant, that the recantation would be genuine and accurate, and that the defendant or others exercised undue influence on the witness.

**12.** Petitioner's other claims are mooted by this ruling.

*Conclusion*

The petition for a writ of habeas corpus is granted.

SO ORDERED.