Vernon **BAGBY**, Petitioner–Appellee,

v.

Robert **KUHLMAN**,
Respondent–Appellant.

No. 790, Docket 90–2404.

United States Court of Appeals,
Second Circuit.

Argued Jan. 10, 1991.

Decided April 30, 1991.

Joseph M. Latino, Asst. Dist. Atty. (Carl A. Vergari, Dist. Atty. of Westchester County, Richard E. Weill, Second Deputy Dist. Atty., of counsel), White Plains, N.Y., for respondent-appellant.

David L. Lewis (Lewis & Fiore, of counsel), New York City, for petitioner-appellee.

Before WINTER and ALTIMARI, Circuit Judges, and WEXLER, District Judge.[*]

ALTIMARI, Circuit Judge:

Appellant Robert Kuhlman appeals from a judgment, entered in the United States District Court for the Southern District of New York (Pierre N. Leval, *Judge*), granting appellee Vernon Bagby's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988). Bagby was convicted in Westchester County Court of possession of controlled substances and criminal use of drug paraphernalia. After exhausting available state remedies, Bagby sought federal habeas relief, claiming, *inter alia,* that his rights under the confrontation clause of the sixth amendment were violated when a witness, who initially testified on behalf of the government, invoked her fifth amendment privilege upon being recalled by the defense. The district court determined that the petitioner had been denied his sixth amendment rights and granted the requested habeas relief.

[*] The Honorable Leonard D. Wexler, United States District Court for the Eastern District of New York, sitting by designation.

For the reasons set forth below, we reverse the judgment of the district court and remand the case for further proceedings.

## BACKGROUND

On December 26, 1978, members of the Mount Vernon Police Department executed a warrant to search the second floor apartment of a two-family house located at 127 South 12th Avenue in Mount Vernon, New York. The apartment was leased by Sandra Mann, who at the time was married to Vernon Bagby. The officers entered the unoccupied apartment and found quantities of controlled substances, including cocaine and amphetamines, and a variety of drug paraphernalia. The contraband was seized, and Bagby was subsequently arrested and charged with several counts of possession of controlled substances and criminal use of drug paraphernalia. Bagby was released on bail pending trial.

The case was prosecuted in Westchester County Court and was tried to the court. At trial, the prosecution essentially sought to establish that Bagby had been residing in Mann's apartment at the time the contraband was seized or, in the alternative, that Bagby exercised sufficient dominion and control over the apartment to infer that he had constructive control over the contraband. Accordingly, the prosecution presented a variety of evidence demonstrating Bagby's presence in, and access to, the apartment. Most significantly, Bagby's ex-wife Mann (they were divorced prior to trial) testified pursuant to subpoena.

On direct examination, Mann stated that in December of 1978 Vernon Bagby was living with her at 127 South 12th Avenue and had a key to the premises. Mann denied possessing, or even being aware of, any of the drugs discovered in her apartment. Further, Mann testified that prior to trial Bagby had threatened to harm her, and her mother, father and daughter, "if anything went wrong with this case." Defense counsel, Howard Rukeyser, conducted a thorough and vigorous cross-examination, during which Mann continued to attest that Bagby had lived with her in December of 1978. Further, during cross-ex-

amination, Mann recalled that she had actually given Bagby two keys to her home, i.e., a key to the front door of the building and a second key to the door of her apartment. Finally, in response to defense counsel Rukeyser's pointed questioning, Mann explicitly denied that any member of the Mount Vernon Police Department, particularly Detective Garcia, had pressured her to testify against Bagby.

When Mann was excused from the stand, the Assistant District Attorney ("ADA") made an application to revoke Bagby's bail. Although the application was denied, the court endorsed the ADA's suggestion that, henceforth, Bagby not "go anywhere near the witness or the witness's family...."

The day after Mann's testimony, defense counsel Rukeyser informed the trial judge that Mann had contacted him and said that she wanted to recant her testimony. Consequently, Rukeyser announced that he planned to recall Mann as a defense witness. The trial judge immediately appointed counsel to advise Mann. In response to these events, the ADA alerted Mann's newly appointed counsel and the court to the fact that Mann had previously provided the District Attorney's Office with a sworn statement which was wholly consistent with her trial testimony. Moreover, the ADA indicated that "if the testimony [on recall] is materially different there is a good likelihood of a perjury prosecution." The court then recessed to afford Mann an opportunity to confer with her counsel.

When the trial resumed, defense counsel recalled Mann to the stand and proceeded to question her as follows:

Q: Miss Mann, you recall you testified previously in this case, I think last Wednesday, do you remember that?

A: Yes.

Q: At that time, I believe, that you testified that during the month of December, 1978, up until December 26th, that your husband, the defendant had been living with you at 127 South 12th Avenue in Mt. Vernon, was that a correct statement?

A: I take the Fifth Amendment.

    *    *    *    *    *    *

Q: Was the defendant living with you during December of 1978?

A: I take the Fifth Amendment.

Q: Did the defendant have keys to the outer door of the premises at 127 South 12th?

A: No, he did not.

At this point, the ADA objected, arguing that Mann should not be permitted to invoke her fifth amendment privilege selectively. In response, Mann's counsel explained that the witness intended to invoke the privilege with respect to all substantive questions and had inadvertently responded to the last question. The trial judge therefore sustained the objection to the last question, effectively striking Mann's reply from the record.

The trial judge then held a brief *in camera* conference with Mann and her counsel. After the conference, Mann retook the stand and again stated that she intended to assert her fifth amendment privilege in response to all questions propounded. The judge excused Mann and the trial proceeded. The court ultimately found Bagby guilty.

On direct appeal, Bagby's conviction was reversed by the Appellate Division, 100 A.D.2d 625, 473 N.Y.S.2d 588 (2d Dep't 1984), and reinstated by the New York Court of Appeals, 65 N.Y.2d 410, 492 N.Y. S.2d 562, 482 N.E.2d 41 (1985). Bagby subsequently filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York. In support of his petition, Bagby claimed, *inter alia:* that he was deprived of an opportunity to confront Mann; that there was insufficient evidence to support a finding that he possessed the contraband; that evidence introduced at trial was obtained as a consequence of an unlawful search and seizure; and that he was prevented from cross-examining a police officer regarding the gender of a confidential informant.

The district court proceeded to consider Bagby's claim that he was denied an adequate opportunity to confront Mann, while holding the remaining claims in abeyance. A hearing was held at which Howard Ruk-

eyser and Sandra Mann were called as witnesses. Rukeyser testified that Mann had contacted him the day after she appeared at Bagby's trial. According to Rukeyser, Mann admitted that she had lied on the stand and explained that Detective Garcia had threatened to prosecute her for drug possession unless she implicated Bagby. Mann's testimony, however, contradicted Rukeyser's version of events. Although unable to recall the specific details concerning her trial testimony, Mann indicated that she did not testify to anything she believed to be false. Further, Mann specifically denied that Detective Garcia pressured her to testify. Rather, Mann explained that it was Bagby whom she feared and recounted that he had hit and beaten her on numerous occasions. Mann also confirmed that she was being truthful when she testified that Bagby had threatened to harm her "if anything went wrong with [the] case."

The district court ultimately issued an opinion addressing Bagby's confrontation clause claim. *See Bagby v. Kuhlman,* 742 F.Supp. 137 (S.D.N.Y.1990). While expressing doubt as to the genuineness of Mann's alleged desire to recant and suggesting that Bagby was afforded an adequate opportunity to cross-examine Mann, Judge Leval nevertheless believed that under the circumstances of the present case reversal of the conviction was required. *See id.,* 742 F.Supp. at 143–45. Accordingly, Judge Leval granted Bagby's petition for a writ of habeas corpus. *See id.* at 145. This appeal followed.

## DISCUSSION

The confrontation clause of the sixth amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." It has long been understood that:

The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.* The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination,

which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.

5 J. Wigmore, Evidence § 1395, at 150 (Chadbourn rev. 1974) (emphasis in original), *quoted in Delaware v. Fensterer,* 474 U.S. 15, 19–20, 106 S.Ct. 292, 294–95, 88 L.Ed.2d 15 (1985) (per curiam) and *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974). Equally well-settled is the concept that the confrontation clause, while guaranteeing "an *opportunity* for effective cross-examination," does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Fensterer,* 474 U.S. at 20, 106 S.Ct. at 294 (emphasis in original); *see United States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988).

■ Consistent with these principles, this Court has recognized that in some instances a defendant's sixth amendment right to confrontation will be denied as a result of a witness' invocation of his or her fifth amendment privilege against self-incrimination. *See, e.g., Klein v. Harris,* 667 F.2d 274, 289 (2d Cir.1981); *Dunbar v. Harris,* 612 F.2d 690, 692 (2d Cir.1979); *United States v. Cardillo,* 316 F.2d 606, 611 (2d Cir.), *cert. denied,* 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963). Of course, not every instance in which a witness invokes the privilege will give rise to a confrontation clause violation. Rather, the sixth amendment is violated only when assertion of the privilege undermines the defendant's opportunity to test the truth of the witness' direct testimony. *See Dunbar v. Harris,* 612 F.2d at 693; *cf. Owens,* 484 U.S. at 559, 108 S.Ct. at 842; *Fensterer,* 474 U.S. at 19–20, 106 S.Ct. at 294–95; 5 Wigmore, *supra,* § 1391 at 137.

■ To reconcile a defendant's rights under the confrontation clause with a witness' assertion of the fifth amendment privilege, a court must initially consider: (1) whether the matter about which the witness refuses to testify is collateral to his or her direct testimony, and (2) whether the assertion of the privilege precludes inquiry into the details of his or her direct testimo-

ny. *See Dunbar,* 612 F.2d at 692, 693; *see also Klein,* 667 F.2d at 289. If the court determines that the privilege has been invoked with respect to a collateral matter, or that the invocation does not preclude inquiry into the witness' direct testimony, then the defendant's right to cross-examine has not been impinged and no corrective action is necessary. Conversely, the sixth amendment is violated when a witness asserts the privilege with respect to a non-collateral matter *and* the defendant is deprived of a meaningful opportunity to test the truth of the witness' direct testimony. To remedy such a violation, the court must determine whether the witness truly waived the privilege by testifying on direct examination. *Klein,* 667 F.2d at 287–88; *see also Brown v. United States,* 356 U.S. 148, 154–57, 78 S.Ct. 622, 626–28, 2 L.Ed.2d 589 (1958). If the privilege is deemed to have been waived, the court should compel the witness to respond to the defense's cross-examination. *Klein,* 667 F.2d at 289; *Cardillo,* 316 F.2d at 611. On the other hand, if the privilege has not been waived, or if the witness simply refuses to testify, the witness' direct testimony should be stricken in whole or in part. *Klein,* 667 F.2d at 289; *Cardillo,* 316 F.2d at 611.

■ Turning to the present case, Bagby complains that Mann's assertion of her fifth amendment privilege, upon being recalled to the stand, deprived him of an opportunity to demonstrate the falsity of Mann's direct testimony. In particular, Bagby stresses that additional cross-examination was necessary to demonstrate that Mann, under pressure from Detective Garcia, falsely testified that Bagby lived in her home throughout December 1978. Since this line of inquiry concerned the very heart of Mann's direct testimony, Bagby contends that the trial court was required either to compel Mann to testify or to strike her direct testimony. We disagree.

As a preliminary matter, we note that the present case is unusual in that Mann did not invoke the fifth amendment until *after* Bagby had vigorously and pointedly cross-examined her about every material aspect of her direct testimony. Further,

defense counsel adeptly attempted to discredit Mann by specifically asking whether she was testifying as a result of threats or pressure from Detective Garcia. Thus, there can be no doubt that Bagby, at least initially, was provided with an ample opportunity to cross-examine Mann.

The critical issue, therefore, is whether the disclosure of Mann's alleged recantation warranted additional cross-examination. More precisely, we must consider whether Bagby was improperly precluded from questioning Mann about her recantation and thereby denied an opportunity to test the truth of Mann's direct testimony.

To understand the nature and significance of Mann's purported recantation, it must be placed in the proper context. The day after testifying, Mann apparently approached Bagby's counsel and indicated that she was forced to provide perjurious testimony against Bagby and that she now wanted to recant. While there is no reason to doubt that Mann made such statements, there is overwhelming reason to question the statements' genuineness. *Cf. Sanders v. Sullivan*, 863 F.2d 218, 225 (2d Cir.1988) (post-trial recantation is to be "looked upon with utmost suspicion"); *United States v. DiPaolo*, 835 F.2d 46, 49 (2d Cir.1987) (same); *United States ex rel. Sostre v. Festa*, 513 F.2d 1313, 1318 (2d Cir.) (same), *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975). Mann has repeatedly stated that Bagby threatened her and her family regarding the substance of her trial testimony. Additionally, on numerous occasions Bagby physically abused Mann. Several of these instances prompted Mann to file criminal charges against Bagby. Clearly, Mann feared Bagby and approached her role as witness for the prosecution with justifiable trepidation.

It is also significant that, following her trial testimony, the only person to whom Mann expressed any desire to recant was Bagby's counsel. In contrast, during all subsequent court appearances, Mann never once suggested that her trial testimony was in any way fallacious; nor has she expressed any desire to repudiate her testimony. Moreover, there is ample reason to believe that Mann testified truthfully. For example, Mann faced vigorous and pointed cross-examination; her testimony was wholly consistent with the sworn statement she provided to the District Attorney's Office; and, when appearing under oath before Judge Leval, Mann stated that she did not deliberately lie at trial and again rejected the notion that she was pressured by the police to testify against Bagby.

For these reasons, we believe that the purported recantation was not trustworthy and, therefore, did not necessitate any additional cross-examination. We have no doubt that Bagby had adequate opportunity to cross-examine Mann and are unpersuaded that Mann's assertion of the fifth amendment on recall deprived Bagby of a meaningful opportunity to test the truth of Mann's direct testimony. Accordingly, we are convinced that the trial court's failure to compel Mann to testify or to strike Mann's testimony did not constitute a violation of Bagby's rights under the confrontation clause.

We also note that our analysis is consistent with the district court's factual findings. *See Bagby*, 742 F.Supp. at 143–44. Indeed, Judge Leval found, *inter alia:* that Mann was afraid of and had been threatened by Bagby; that Mann's announced intention to recant was untrustworthy; that Bagby had an adequate opportunity to cross-examine Mann; and that there was no need for further cross-examination in light of Mann's recantation. *See Bagby*, 742 F.Supp. at 144. Nevertheless, Judge Leval concluded—based on a misreading of relevant precedent—that he was constrained to grant Bagby's petition. *See id.* Specifically, Judge Leval analyzed our opinion in *Klein v. Harris* as follows:

> The *Klein* court ruled essentially that where defense counsel advises of the witness's announced intention to recant and the witness claims the Fifth Amendment privilege upon being recalled to the stand, the court is required to assume that the defendant was deprived of a *bona fide* recantation. The trial judge, according to *Klein*, has no alternative but to override the privilege and compel

testimony or to strike the testimony previously given.

*Bagby*, 742 F.Supp. at 143. However, rather than adopting the *per se* rule described by Judge Leval, in *Klein* we actually affirmed the principle that a witness' invocation of the fifth amendment will not violate a defendant's right to confrontation *unless* "the refusal precludes the defendant from testing the truth of the witness' prior testimony." *Klein*, 667 F.2d at 289. Because we are convinced that Mann's fifth amendment assertion did not preclude Bagby from testing the truth of Mann's testimony, our holding in the present case is in complete accord with our holding in *Klein*.

Our decision also finds support in cases recognizing that the right to confrontation may be waived as a consequence of a defendant's own misconduct. *See United States v. Potamitis*, 739 F.2d 784, 788 (2d Cir.), *cert. denied sub nom. Argitakos v. United States*, 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984); *United States v. Mastrangelo*, 693 F.2d 269, 272–73 (2d Cir. 1982), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 343 (1984); *see also Mitchell v. Hoke*, 930 F.2d 1, 3 (2d Cir.1991) (per curiam). In *Mastrangelo* we stated, "if a witness' silence is procured by the defendant himself, whether by chicanery, by threats, or by actual violence or murder, the defendant cannot then assert his confrontation clause rights in order to prevent ... [the] testimony of that witness from being admitted against him." *Mastrangelo*, 693 F.2d at 272–73 (citations omitted). Here, we believe that it would be absurd to permit Bagby to prevail on his claimed sixth amendment violation if his threats and acts of violence precipitated Mann's alleged recantation and her invocation of the fifth amendment privilege. *See Bagby*, 742 F.Supp. at 144. However, because we hold that Bagby's rights under the confrontation clause were not violated, we need not fully consider the issue of waiver by misconduct.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for consideration of petitioner-appellee's remaining claims.