*Jones v. Bell*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of May, two thousand twenty-three.

PRESENT:

> RICHARD J. SULLIVAN,
> WILLIAM J. NARDINI,
> MYRNA PÉREZ,
> *Circuit Judges*.

_____

ALLEN JONES,

> *Petitioner-Appellant*,

v.                                                                            No. 22-312

SUPERINTENDENT EARL BELL, CLINTON CORRECTIONAL FACILITY,

> *Respondent-Appellee.*

_____

For Petitioner-Appellant:    DAVID J. KLEM (Robert S. Dean, *on the brief*), Center for Appellate Litigation, New York, NY.

For Respondent-Appellee:    SHEILA O'SHEA, Assistant District Attorney (Steven C. Wu, Chief of Appeals Division, *on the brief*), *for* Alvin L. Bragg, Jr., District Attorney for New York County, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Allen Jones appeals from the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, following his conviction for first-degree manslaughter and first-degree gang assault in connection with the May 2010 shooting and death of Elias Peguero at a bodega in Manhattan. On appeal, Jones argues that (1) the prosecution violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding certain information regarding a cooperating witness, Yandwin Corniel, from the defense, and (2) the state trial court violated his Sixth Amendment right to confrontation when it refused to strike Corniel's testimony after he invoked his Fifth Amendment privilege during cross-

examination. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review the denial of a section 2254 petition de novo. *Scrimo v. Lee*, 935 F.3d 103, 111 (2d Cir. 2019). A federal court may not grant a writ of habeas corpus pursuant to section 2254 unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 86, 100 (2011).

## I. *Brady* Claim

"It is well-established by *Brady* and related authorities that in a criminal prosecution, the government has an affirmative duty under the Due Process Clause to disclose favorable evidence known to it, even if no specific disclosure request is made by the defense." *United States v. Hunter*, 32 F.4th 22, 30 (2d Cir. 2022) (internal quotation marks omitted). "That said, not all instances of governmental nondisclosure violate *Brady* . . . ." *Id.* Rather, the *Brady* doctrine extends only to evidence that is "(1) favorable, (2) suppressed, and (3) prejudicial."

*Id.* at 31. Moreover, for the withheld evidence to be prejudicial, it must be "material either to guilt or to punishment." *Brady*, 373 U.S. at 87. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Stillwell*, 986 F.3d 196, 200 (2d Cir. 2021) (internal quotation marks omitted). Undisclosed impeachment evidence concerning a government witness "may be . . . material where the witness in question supplied the only evidence linking the defendant to the crime." *United States v. Avellino*, 136 F.3d 249, 256 (2d Cir. 1998). By contrast, "where ample ammunition exists to attack a witness's credibility, evidence that would provide an additional basis for doing so is ordinarily deemed cumulative and hence immaterial." *United States v. Orena*, 145 F.3d 551, 559 (2d Cir. 1998).

Jones argues that the prosecution committed a *Brady* violation by purposefully withholding information regarding Corniel's prior bad acts and criminality. Jones argues that the withheld evidence was material under *Brady* because "it went to the heart of Corniel's credibility," which was a critical issue in the case given that he was "the only witness to offer direct evidence of Jones'[s] intent." Jones Br. 17–18. Specifically, Corniel testified that Jones had said "pop

4

him" shortly before Jones's co-defendant Nakae Thompson shot Peguero. Jones Addendum at 8. Jones additionally asserts that the withheld evidence was relevant to assessing Corniel's bias because Corniel had entered into a cooperation agreement and the prospect of immunity for his crimes "provided strong motive for Corniel to curry favor with the prosecution." Jones Br. 22–23.

We cannot conclude that the withheld evidence was material under *Brady*. At trial, Jones had ample information to impeach Corniel's credibility; indeed, Corniel was cross-examined as to his contradictory grand jury testimony, in which he identified Jones's associate, Danny Barnhill, as the individual who had said "pop him" and admitted to being high on the evening of the shooting. And critically, Corniel admitted on cross-examination that he did not know who said "pop him," thus demonstrating that Corniel had been thoroughly impeached on that issue. Dist. Ct. Doc. No. 16-22 at 52–54.

The jury also knew that there was a then-pending case against Corniel involving the possession of a weapon and ammunition, that he had entered into a cooperation agreement with the prosecution, and that he had an extensive criminal history that included crimes of dishonesty, such as selling fake drugs. *See United States v. Estrada*, 430 F.3d 606, 618 (2d Cir. 2005) (recognizing "rule of thumb" that

5

"convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not" (internal quotation marks omitted)). Accordingly, we agree with the district court that the undisclosed evidence regarding Corniel's additional criminal conduct was cumulative.

Furthermore, we have noted that "[w]here the evidence against the defendant is ample or overwhelming, the withheld *Brady* material is less likely to be material than if the evidence of guilt is thin." *Hunter*, 32 F.4th at 32 (internal quotation marks omitted). Here, we agree with the district court that the record contains ample evidence establishing that Jones acted with the requisite intent for the manslaughter and gang-assault counts. Surveillance video confirms that Jones violently assaulted Peguero in the bodega and that he saw Barnhill hit Peguero in the face with a bag of ice. And, as the district court noted, surveillance video also shows that Jones looked at Thompson while Thompson had the gun in his hand, did not appear to react to seeing the gun, and instead continued to pursue Peguero. The video evidence was corroborated at trial by the testimony of the bodega clerk, who stated that Thompson could be seen pointing the gun at Peguero prior to the shooting and that Jones calmly walked out of the bodega after Peguero had been shot. Given the ample evidence of intent in the record other

6

than Corniel's testimony, we cannot conclude that the withheld evidence was material under *Brady*.

## II.    Confrontation Clause Claim

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."   U.S. Const. amend. VI.   Supreme Court caselaw clearly establishes that the Confrontation Clause entitles a criminal defendant to "a meaningful opportunity to cross-examine witnesses against him."   *Alvarez v. Ercole*, 763 F.3d 223, 229–30 (2d Cir. 2014) (internal quotation marks omitted); *see also Davis v. Alaska*, 415 U.S. 308, 315–16 (1974).   Nevertheless, although the Confrontation Clause guarantees "an *opportunity* for effective cross-examination," it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."   *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

"Consistent with these principles, this Court has recognized that in some instances a defendant's [S]ixth [A]mendment right to confrontation will be denied as a result of a witness'[s] invocation of his or her [F]ifth [A]mendment privilege against self-incrimination."   *Bagby v. Kuhlman*, 932 F.2d 131, 135 (2d Cir. 1991).

7

In order to reconcile these competing interests, a court must consider "(1) whether the matter about which the witness refuses to testify is collateral to his or her direct testimony, and (2) whether the assertion of the privilege precludes inquiry into the details of his or her direct testimony." *Id.* While matters that bear only on witness credibility are collateral, *see United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir. 1963), matters "tending to establish a reason to fabricate" are not, *Justice v. Hoke*, 90 F.3d 43, 48 (2d Cir. 1996) (internal quotation marks omitted); *see also Davis*, 415 U.S. at 316 (explaining that "[t]he partiality of a witness" including "possible biases, prejudices, or ulterior motives," is "always relevant as discrediting the witness and affecting the weight of his testimony" (internal quotation marks omitted)). If a witness invokes the privilege regarding a collateral matter or if such invocation does not preclude inquiry into the witness's direct testimony, no corrective action is necessary. *Bagby*, 932 F.2d at 135; *United States v. Brooks*, 82 F.3d 50, 54 (2d Cir. 1996). A witness's testimony need only be stricken when the "witness's assertion of the privilege precludes inquiry into the details of his direct testimony so that the defense is deprived of the right to test the truth of his direct testimony." *Brooks*, 82 F.3d at 54 (internal quotation marks omitted).

Jones argues that the state trial court deprived him of the right to confront Corniel about his cooperation agreement and his possible motivations for testifying against Jones. Jones also asserts that the stipulation concerning Corniel's pending criminal charges and cooperation that was read to the jury was an insufficient substitute for cross-examination because the stipulation did not explain the benefits that Corniel was to receive, or that he expected to receive, by virtue of his cooperation.

We conclude that the district court properly denied habeas relief as to Jones's Confrontation Clause claim. Here, the stipulation regarding Corniel's cooperation agreement enabled the jury to make a "discriminating appraisal" of Corniel's credibility and motive to lie. *United States v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990) (internal quotation marks omitted). The stipulation set forth the basic facts regarding Corniel's then-pending gun charge, noted that he was facing up to fifteen years in prison if convicted of that charge, and represented that the prosecution would inform the sentencing court in Corniel's case as to the extent of his cooperation. Because the stipulation provided the jury with facts sufficient to make a discerning appraisal of Corniel's motives, it was not necessary that the jury be specifically informed as to Corniel's subjective understanding of

9

the benefits he stood to gain from cooperating. We therefore conclude that there was no violation of Jones's Sixth Amendment right.

Even assuming that there had been a violation of Jones's right to confront Corniel, we agree with the district court that any such error was harmless. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). As explained above in the context of Jones's *Brady* claim, the record contained ample evidence of Jones's guilt of manslaughter and gang assault, even without Corniel's testimony. Indeed, video surveillance footage and the bodega clerk's corroborating testimony reflected that Jones violently assaulted Peguero, witnessed Barnhill assault Peguero, did not react when he saw Thompson holding a gun, and calmly exited the bodega after the shooting – evidence which provided abundant support for the jury's conclusion that Jones acted with the requisite intent. Because we cannot conclude that any purported violation of Jones's Sixth Amendment right had a "substantial and injurious effect or influence" on the jury's verdict, the purported Confrontation Clause violation was harmless. *Henry v. Speckard*, 22 F.3d 1209, 1215 (2d Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10