**Jose MERCADO, Petitioner,**

**v.**

**James STINSON, Superintendent, Respondent.**

**No. 98 Civ. 0551(HB)AJP.**

United States District Court, S.D. New York.

Feb. 10, 1999.

Jose Mercado, Comstock, NY, plaintiff pro se.

Marisa Rieue, Asst. Attorney General, New York City, defendant.

### ORDER

BAER, District Judge.

I referred this habeas corpus petition to Magistrate Judge Peck on February 17, 1998. On August 4, 1998, Magistrate Judge Peck issued a Report and Recommendation which recommended that petitioner's request for habeas relief be denied on the grounds that while the trial court violated petitioner's Sixth Amendment Confrontation Clause Rights, the error was harmless and that the trial judge's response to the jury's question was not erroneous under New York law.

The Report and Recommendation advised the parties of their obligation to file timely objections under 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). To date, no objections have been filed and I have found no clear error in the Report and Recommendation of Magistrate Judge Peck.

Therefore, I adopt the Report and Recommendation in all respects. As petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253, as amended by the Anti–Terrorism and Effective Death Penalty Act of 1996. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

### REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Petitioner Jose Mercado was convicted of robbing Balducci's Food Store along with five others. At trial, Oneal Serrano, the Balducci's employee who masterminded the robbery, testified for the prosecution; Serrano described the robbery, but he refused to testify on direct or cross-examination as to whether Mercado was involved in the robbery. Petitioner Mercado's present habeas petition alleges that the trial court violated Mercado's Sixth Amendment Confrontation Clause rights when Serrano's testimony was not struck after he refused to answer as to whether Mercado was involved in the robbery. (Petition ¶ 12(B).) Mercado also claims that his due process rights were violated when he was charged as a principal in the robbery, but in response to a jury question during deliberations, the trial judge instructed the jury that it could convict Mercado of robbery even if he was an accomplice who remained outside the store. (Petition ¶ 12(A).)

For the reasons set forth below, I recommend that Mercado's petition be denied on the merits of both grounds.

### FACTS

Mercado was indicted on eight counts of robbery in the first degree and four counts of robbery in the second degree, for his participation in the July 11, 1993 robbery of Balducci's and some of its employees. (Affidavit of ADA Marisa Rieue, dated 6/5/98, ¶ 8 & Ex. B: Indictment.)

The prosecutor's opening statement alleged that Mercado and two others entered Balducci's at 9:40 P.M. on July 11, 1993, pointed guns at the store's employees and forced the manager to open the safe. (Trial Transcript ["Tr."] at 260–62.) The robbers stole $60,000 in cash, and also stole jewelry, money and credit cards from store employees. (Tr. 262.) The prosecutor stated that a store employee, Christopher Romano, would testify that he saw

Mr. Mercado's face when Mercado came into Balducci's with his gun drawn. (Tr. 266.) The prosecutor concluded that the State "will prove beyond a reasonable doubt by testimony and by physical evidence that Mercado was one of the three robbers who went into Balducci's that Sunday evening in July." (Tr. 273.)

The first prosecution witness, Christopher Romano, a Balducci's employee, identified Mercado as one of the robbers inside the store. (Tr. 274–76, 278–81.)[1] Police officers testified to the search of Serrano's apartment and the recovery of guns, handcuffs, Balducci's bank deposit slips, money and other items, some of which had Mercado's fingerprints on them. (Tr. 533–39, 554, 835–47, 1004–06, 1012.)

### Oneal Serrano's Testimony

Before the prosecution called the Balducci's employee who masterminded the robbery, Oneal Serrano, to testify, the trial court discussed issues concerning that testimony with counsel outside the jury's presence. Serrano had pled guilty, signed a cooperation agreement with the State, and been sentenced for his participation in the Balducci's robbery, although he was appealing his conviction. (Tr. 772, 870.) Serrano's counsel informed the court that Serrano would not invoke his Fifth Amendment privilege, but that Serrano "is going to refuse to answer certain questions in spite of the fact that he understands that he may be held in contempt." (Tr. 773–74.) When the court asked what those questions were, Serrano's counsel responded that "those are all of the questions that will *implicate* Mr. Mercado." (Tr. 775, emphasis added; *accord,* Tr. 783, where Serrano's counsel reiterates that Serrano "told me that he doesn't want to answer any questions which implicate Mr. Mercado.") Mercado's counsel objected to Serrano's testifying if he were not going to answer all questions. (Tr. 785–86.)

The prosecution called Serrano to the stand. (Tr. 786.) Serrano testified that in July 1993, he worked at Balducci's. (Tr. 788.) Serrano testified that he and another employee got the idea to rob the store, and Serrano obtained a set of keys to the store to facilitate the robbery. (Tr. 789.) On July 11, 1993 at 9:00 P.M., Serrano and five others met at his parents' home. (Tr. 791–92.) The six men, with handcuffs and four guns, then drove to Balducci's. (Tr. 792, 795–96, 799–800.) Three of the robbers went into Balducci's while Serrano and two others waited outside. (Tr. 796–97.) The three came back carrying money in brown bags, and then they all drove to Serrano's parents' house to divide the $60,000 robbery proceeds. (Tr. 797–98.) Each of the six men received around $10,000. (Tr. 798.)

During a break in Serrano's testimony, outside the jury's presence, the court returned to the issue of what questions Serrano would refuse to answer. (Tr. 864.) The prosecutor said he would ask Serrano who participated in the robbery, and follow up by asking whether Mercado participated. (Tr. 864–65.) Mercado's counsel stated that "Mr. Serrano has informed me categorically he will refuse to answer any questions which *implicate* Mr. Mercado." (Tr. 865, emphasis added.) The court asked Serrano's counsel what Serrano would do when the court directed him to answer the question, and Serrano's counsel replied that Serrano would refuse to answer, even when advised that he would be held in contempt. (Tr. 868–69.)

The court asked Mercado's counsel if he wanted a "limiting instruction" given to the jury if Serrano did refuse to answer the question: "Do you want me then to tell the jury that [Serrano's] refusal to answer cannot in any way be held against your client and that his refusal can be used only to assess the credibility of the witness?" (Tr. 869–70.) Mercado's counsel replied that he wanted that instruction. (Tr. 870.)

---

1. As the prosecutor indicated in opening statements, Romano was the only Balducci's employee who was able to identify Mercado. (Tr. 269.)

During the colloquy, the prosecutor noted that Serrano's grand jury testimony "named the defendant" Mercado as one of the robbers. (Tr. 866–68.)

The jury was brought in for Serrano's further testimony. (Tr. 873.) Serrano identified the guns used in the robbery, the Balducci's "money bags" and some of the money from the robbery. (Tr. 874–83.) Serrano also testified that he was arrested and indicted for the robbery, pled guilty, and was sentenced to three and a third to eleven years imprisonment. (Tr. 884–86.)

Serrano refused to answer the prosecutor's final question, concerning his accomplices:

> Q. *Now, Mr. Serrano, who did you commit this robbery with on July 11, 1993?*
>
> A [SERRANO]: *I refuse to answer that question.*
>
> [ADA] FITZGERALD: Your Honor, I would ask you to instruct the witness.
>
> THE COURT: Mr. Serrano, that is a proper question. I direct you to answer it.
>
> THE WITNESS: I respectfully refuse, your Honor, to answer that question.
>
> THE COURT: If you refuse to obey a lawful order of the Court, you will be subject to additional criminal charges of contempt of Court. Do you understand that?
>
> THE WITNESS: Yes, I do, your Honor.
>
> Q. And do you still refuse to answer the question.
>
> A. Yes.

(Tr. 886, emphasis added.) The trial judge then instructed the jury that Serrano's refusal to answer could not "in any way be held against [Mercado]. It is information for you to use in assessing [Serrano's] credibility and for no other purposes."

(Tr. 887.) [2] After the jury was excused, Mercado's counsel moved to strike Serrano's entire testimony. (Tr. 887.) The trial court denied the motion. (Tr. 887.)

On cross-examination, Serrano testified that he "planned and orchestrated" and "put this whole robbery together." (Tr. 890.) Mercado's counsel established that from where Serrano waited outside Balducci's, Serrano could not see which of his group went into the store and who stayed outside. (Tr. 895, 909.) Mercado's counsel asked other questions to establish that all those involved touched the handcuffs, money bags and other items, and therefore fingerprints on those items would not show who actually went into Balducci's. (Tr. 895–909.)

On Mercado's counsel's cross-examination, as on the prosecutor's direct, Serrano refused to say whether Mercado was involved in the robbery:

> Q. Do you know my client, do you know my client?
>
> A [SERRANO]: I refuse to answer that question.
>
> MR. MARINO [DEFENSE COUNSEL]: *Do you know if [Mercado was] involved in this particular case?*
>
> A. *I refuse to answer that question.*
>
> .   .   .   .   .
>
> THE COURT: ... I direct you to answer all of the questions that Mr. Marino has asked you.
>
> [SERRANO]: With all due respect, your Honor, I refuse to answer those questions.
>
> THE COURT: I have to warn you once again, your refusal to answer a directive of the Court subjects you to criminal charges of criminal contempt of court.
>
> [SERRANO]: I understand that.
>
> .   .   .   .   .

**2.** During the pre-charge conference, the trial court noted that he gave this instruction only once during Serrano's testimony "because no one asked [the court] to" repeat it, and indicated he would repeat it in his final charge. (Tr. 979; *see also* Tr. 1049–50.) The trial court did, in fact, repeat it in the charge. (Tr. 1099.)

Q. Do you know if my client was there [at the July 4 meeting to prepare for the robbery]?

A. I refuse to answer that question.

.     .     .     .     .

THE COURT: I repeat my directive to answer.

[SERRANO]: With all due respect, your Honor, I refuse to answer all those questions.

THE COURT: Your refusal to obey my directive subjects you to charges of contempt.

[SERRANO]: I understand that, your Honor.

(Tr. 912–13, emphasis added.)

Mercado's counsel concluded his cross-examination by establishing that part of Serrano's plea agreement with the prosecutor involved sentencing consideration for his testifying. (Tr. 915–16.)

After redirect, on re-cross, Mercado's counsel again asked Serrano if Mercado was involved in the robbery:

Q. *I ask you again, did my client, Mr. Mercado, go to the store or go to the area of the store, not necessarily inside, go to the area of that store on this particular night of July 11?*

A [SERRANO]: *I refuse to answer that question.*

Q. Again, your Honor.

THE COURT: Again, Mr. Serrano, I direct you to answer.

[SERRANO]: With all due respect, your Honor, I refuse to answer.

THE COURT: I have to advise you once again, your refusal subjects you to criminal charges of criminal contempt.

[SERRANO]: I understand that, your Honor.

(Tr. 925–26, emphasis added.)

### Closing Argument, the Jury Charge and the Trial Court's Supplemental Jury Instructions

Mercado rested his case without calling any witnesses. (*See* Tr. 1034.)

During the charge conference, the prosecutor noted that "Christopher Romano identified this defendant as being one of the three individuals who came into the store. And of course this defendant [Mercado] is being charged both as an individual and acting in concert with others." (Tr. 1038.) With respect to acting in concert, in connection with the robbery of the Balducci's employees, the trial judge stated that "if there was a plan and they were all part of it to rob Balducci's, the fact that somebody stayed in the car ... doesn't absolve him from the action of the person who actually took the money from Balducci's." (Tr. 1040–41.)

In closing argument, Mercado's counsel stressed that, according to Serrano's testimony, only three of the five people that discussed the robbery with him entered the store, and there was no evidence that the other two, who stayed outside, acted as lookouts. (Tr. 1056–58.) Mercado's counsel told the jurors that Serrano and two others pled guilty to the robbery (Tr. 1058–59), and counsel questioned Mr. Romano's identification of Mercado as the third robber in Balducci's. (Tr. 1059–64.) Mercado's counsel explained that Mercado's fingerprints could have gotten on the money and deposit slips in the car or at Serrano's parents' house. (Tr. 1064–65.) He argued that Mercado's knowledge of the crime and presence was not enough, and that the prosecution had not proven Mercado guilty of the robbery beyond a reasonable doubt. (Tr. 1065.)

The prosecution's summation stressed Romano's identification of Mercado as one of the robbers who entered Balducci's, and the fingerprint evidence. (Tr. 1065–70, 1072–81, 1085–86.)

The trial court charged the jury as to "acting in concert":

*People concede that the defendant, Jose Mercado, acted in concert with Oneal Serrano and other individuals so as to*

make lose Mercado responsible for those other people's actions. The defendant denies that he acted in concert with Oneal Serrano or anybody else. And I'm now going to discuss with you the law with respect to the principle which we call for short, acting in concert.

*Under the law of New York, a person is liable for criminal acts not only when he directly commits it, but when he is present and intentionally aiding in the commission.* This basic principle is stated in Penal Law Section 20.00 which reads as follows: When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when acting with the mental culpability required for the commission thereof; he solicits, requests, commands, importunes or intentionally aids such person to engage in such conduct.

Under this rule of law, the guilt of a defendant may be established without proof that a defendant did each and every act constituting the crime charged. Please keep this rule of law in mind when I tell you the elements of robbery in the first degree, three counts, and robbery in the second degree, three counts which I'm going to be doing in just a few minutes.

Every person who intentionally participates in the commission of a crime may be found guilty of that very crime. However, mere presence at the scene of the crime is not sufficient, nor may an inference of participation in the crime be based solely on the evidence that a defendant knew this crime was being committed by someone else. Mere association, however close with someone who commits a crime or a mere knowledge or mere presence at the scene of the crime are not sufficient in and of themselves to convict a person of a crime. There must be intentional participation. Those are the key words, intentional participation. Participation is intentional if it's done voluntarily and purposefully and with a specific intent to do some act that the law forbids.

.    .    .    .    .

The degree or extent to which a defendant intentionally participates in the crime is immaterial in fixing his responsibility for when two or more persons act together in the commission of a crime. The law does not stop to apportion the percentage of guilt that may attach to each of them. A participant who has a minor role is just as guilty as a participant who plays a major role in the commission of a crime. You are not required to measure the amount of aid given or received. In short, *the rule is that a person who intentionally aids in the commission of a crime is himself guilty of that very crime.*

In this case, *the prosecution has the burden of establishing beyond a reasonable doubt that the defendant was a person who acted in concert with Oneal Serrano and others to commit the crimes of robbery charged. If you're satisfied that the defendant with the intent to commit the crimes of robbery aided other persons in committing those crimes, then the defendant under our law would be criminally liable for the action of Serrano and those other persons. It is for you to say whether the defendant participated in the alleged crimes of robbery acting in concert with others.* And in determining this issue, you will consider all of the facts and circumstances surrounding the alleged incident.

(Tr. 1100–03, emphasis added.) Mercado's counsel did not object to the acting in concert charge. (*See* Tr. 1132–40.)

During the jury's deliberations, the jury sent a note asking for further instructions " 'to help us answer this question. Under what circumstances can we find guilty if we believe defendant was not in store?' " Outside the jury's presence, the following discussion took place:

THE COURT: . . . .

With regard to the first one, I can just tell them that the People must prove each and every element and that being inside the store is not an element. I can tell them that. I don't know if that helps them.

Mr. Marino [Mercado's counsel], what did you want me to tell them? ...

MR. MARINO: The answer to the—regards to the first, if he's not in the store, Judge? The answer would be that you can't find him guilty if that's the only situation. That's the situation.

THE COURT: I don't believe that's the case. It's not an element of the crime. And I don't believe that there is anything in the way the case was tried that would bind the People to finding—

MR. MARINO: Judge, the People's case relies on the individual being in the store. That's their case. There is nothing to indicate he's outside the store. I'm the one that said if there are two individuals outside the store doing nothing and there is no evidence to the fact that they received any money, then they are merely present and they didn't do anything.

.      .      .      .      .

THE COURT: Maybe the jury thinks your client was one of those two.

MR. MARINO: And could be, Judge. And it could be an argument that he could be one of those two, Judge, because we don't know which of the five went into the store except for the two that pleaded guilty. We don't know that, Judge. And you can't make those assumptions. You assume because he's here that he went into the—

THE COURT: Let's assume for a minute that he didn't go in, but they believed he was outside and he was one of the six that Serrano said was involved in this crime. Are you telling me that he can't be—

MR. MARINO: I'm telling you, based on the testimony, Judge, and I agree with you, if he did something, if, if he, if he did to encourage, shared in the money—

.      .      .      .      .

THE COURT: .... I'm not going to get into their—obviously there are things in this record which both arguments can be made and I'm not going to determine those issues of fact, if they are really issues of fact in this trial. I'm not going to get into that detail with regards to the evidence. Can I have the question back?

And actually, I can go on to say, being in the store is not an element they have to prove that he was a participant in the crime. And I believe that that covers it. That's the answer to the first one, but I'm not going to foreclose them finding him—I'm not going to say he's not guilty if he wasn't in the store.

MR. MARINO: Okay, that he would have to prove the elements....

(Tr. 1148–49, 1151–53.)

The jury was brought in and the court then answered their question:

THE COURT: I have your later note.... And you asked three questions. You say, "Instructions to help us answer this question: Under what circumstances can we find guilty if we believe defendant was not in the store."

People must prove beyond a reasonable doubt each and every element of each of the six charges. The circumstances under which you can find him guilty, the factual circumstances is something for you to decide. You have to determine whether or not the People have met their burden of proving each of the elements, and there are five for each of the six charges, the three robbery charges in the first degree and three robbery charges in the second degree.

(Tr. 1155–56.) The court also reiterated its original acting in concert instruction. (Tr. 1157–61; *see also* Tr. 1186–90.)

Mercado claims that the trial court's answer to the jury's question amounted to a constructive amendment of the indictment because it allowed the jury to find Mercado guilty even if he never entered the store. (Petition ¶ 12(A).) Mercado further claims he was not given notice that he may be convicted as an accomplice because the indictment charged him as a principal, and throughout the trial, the prosecution pursued the theory that he had actually entered the store. (*Id.*)

### Verdict and Sentencing

The jury found Mercado guilty of one count each of robbery in the first and second degrees. (Tr. 1191–92; *see also* Petition ¶¶ 1–4.) On June 24, 1994, Mercado was sentenced as a predicate felon to ten to twenty years on the first degree robbery count and a concurrent sentence of six to twelve years on the second degree robbery count. (6/24/94 Sentencing Tr. at 4, 13; *see also* Petition ¶¶ 2–3.)

### State Court Appeals

The First Department affirmed Mercado's conviction, stating:

> The trial court appropriately exercised its discretion when it denied defendant's motion to strike the entire direct testimony of a prosecution witness who refused to answer one question posed by the prosecutor regarding the identity of the participants in the robbery, and when it instructed the jury, with defendant's approval, that the witness' refusal to answer could be considered in assessing his credibility. There was no violation of the Confrontation Clause because the defense was given the opportunity to expose infirmities in the witness' direct testimony through cross-examination. Further, defendant utilized the witness' refusal to answer to his benefit, and has

not demonstrated that he was prejudiced by the court's ruling.

> The trial court's supplemental instructions regarding accomplice liability did not alter the theory of prosecution.

*People v. Mercado,* 237 A.D.2d 200, 200, 655 N.Y.S.2d 474, 474 (1st Dep't 1997) (citations omitted). The New York Court of Appeals denied leave to appeal. *People v. Mercado,* 90 N.Y.2d 895, 662 N.Y.S.2d 438, 685 N.E.2d 219 (1997).

### Mercado's Present Habeas Petition

Mercado's federal habeas petition was received by the Court's Pro Se Office on January 7, 1998.[3] The petition raises two issues. Mercado claims that he was denied his Sixth Amendment right to confront Serrano when Serrano refused to answer questions concerning whether Mercado was involved in the Balducci's robbery, and the trial court declined to strike Serrano's testimony. (Petition ¶ 12(B).) Mercado also alleges that his constitutional rights were violated because he did not have "fair notice" of the charge against him, *i.e.,* the trial court's response to the jury's question allowing him to be convicted even without being inside Balducci's differed from the indictment and the prosecution's theory of the case during trial. (Petition ¶ 12(A).)

### ANALYSIS

**I. WHILE THE TRIAL COURT VIOLATED MERCADO'S SIXTH AMENDMENT CONFRONTATION CLAUSE RIGHTS, THE ERROR WAS HARMLESS**

#### A. Mercado's Confrontation Clause Rights Were Violated

The Confrontation Clause of the Sixth Amendment affords the accused the right "to be confronted with the witnesses

**3.** Mercado's petition, therefore, clearly was filed within the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d). The State does not challenge the timeliness of Mercado's habeas petition. The State also concedes that Mercado has exhausted his claims in state court. (Gov't Br. at 3.)

against him." U.S. Const. amend. VI. The Sixth Amendment's Confrontation Clause is also applicable in state criminal trials. *E.g., Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). The right to confront witnesses has been interpreted as "securing an adequate opportunity to cross-examine adverse witnesses." *United States v. Owens,* 484 U.S. 554, 557, 108 S.Ct. 838, 841, 98 L.Ed.2d 951 (1988); *see also, e.g., Pennsylvania v. Ritchie,* 480 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987); *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *Douglas v. Alabama,* 380 U.S. at 418, 85 S.Ct. at 1076, 13 L.Ed.2d 934; *Bagby v. Kuhlman,* 932 F.2d 131, 135 (2d Cir.1991); *Dunbar v. Harris,* 612 F.2d 690, 692 (2d Cir.1979); *United States v. Cardillo,* 316 F.2d 606, 610–11 (2d Cir.), *cert. denied,* 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963).

A witness who continuously refuses to answer relevant questions on cross-examination may be punished for contempt of court. *See, e.g., Brown v. United States,* 356 U.S. 148, 152, 78 S.Ct. 622, 625, 2 L.Ed.2d 589 (1958); *United States v. Martin,* 525 F.2d 703, 707–08 (2d Cir.), *cert. denied,* 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410 (1975); N.Y. Penal Law § 215.50(4). However, the witness' recalcitrance on cross-examination does not necessarily require the direct testimony be struck to conform with the Sixth Amendment. *See, e.g., Bagby v. Kuhlman,* 932 F.2d at 135; *Dunbar v. Harris,* 612 F.2d at 692; *United States v. Cardillo,* 316 F.2d at 611. Rather, the Second Circuit uses a two-step analysis to determine whether the Confrontation Clause is implicated by a witness' refusal to answer questions on cross-examination:[4]

To reconcile a defendant's rights under the confrontation clause with a witness' assertion of the fifth amendment privilege, a court must initially consider: (1) whether the matter about which the witness refuses to testify is collateral to his or her direct testimony, and (2) whether the assertion of the privilege precludes inquiry into the details of his or her direct testimony. *See Dunbar* [v. *Harris*], 612 F.2d at 692, 693; *see also Klein* [v. *Harris*], 667 F.2d [274] at 289 [(2d Cir.1981)]. If the court determines that the privilege has been invoked with respect to a collateral matter, or that the invocation does not preclude inquiry into the witness' direct testimony, then the defendant's right to cross-examine has not been impinged and no corrective action is necessary. Conversely, the sixth amendment is violated when a witness asserts the privilege with respect to a non-collateral matter *and* the defendant is deprived of a meaningful opportunity to test the truth of the witness' direct testimony. To remedy such a violation, . . . if the witness simply refuses to testify, the witness' direct testimony should be stricken in whole or in part.

*Bagby v. Kuhlman,* 932 F.2d at 135; *see also e.g., United States v. Zapata,* 871 F.2d 616, 624 (7th Cir.1989) ("a court's resolution of [a conflict between a witness' Fifth Amendment right against self-incrimination and a defendant's Sixth Amendment right to confrontation] should focus on whether the unanswered questions involved matters directly related to the scope of the direct examination or to collateral matters") (citing *Cardillo*); *United States v. Nunez,* 668 F.2d 1116, 1122 (10th Cir.1981) (quoting *Cardillo*); *Turner v. Fair,* 617 F.2d 7, 10–11 (1st Cir.1980) (quoting *Cardillo*); *Dunbar v. Harris,* 612 F.2d at 692; *United States v. Cardillo,* 316 F.2d at 611; *Carmona v. State of New York,* 96 Civ. 8045, 1997 WL 876737 at *12

---

4. While this analysis was established in the more common scenario of a prosecution witness invoking the Fifth Amendment privilege against self-incrimination on cross-examination, the Court sees no reason why it should not apply to a situation, such as the one here, where a witness simply refuses to testify.

(S.D.N.Y. Oct.7, 1997) (citing *Bagby*); *United States v. Talco Contractors, Inc.,* 153 F.R.D. 501, 506 (W.D.N.Y.1994) (citing *Bagby* and *Cardillo*).

The first issue, therefore, is whether the questions Serrano refused to answer were collateral to his direct testimony. Collateral matters are those that bear solely on the witness' credibility. *See, e.g., United States v. Calvente,* 722 F.2d 1019, 1024 (2d Cir.1983); *United States v. Humphrey,* 696 F.2d 72, 75 (8th Cir.1982); *Dunbar v. Harris,* 612 F.2d at 693–94; *United States v. Cardillo,* 316 F.2d at 611; *Carmona v. State of New York,* 1997 WL 876737 at *12. "If the purpose of cross-examination is to explore more than general credibility, the subject of inquiry is not collateral." *Dunbar v. Harris,* 612 F.2d at 693; *see also, e.g., United States v. Badalamenti,* 84 Cr. 236, 1985 WL 3844 at *1 (S.D.N.Y. Nov. 25, 1985) (citing *Cardillo*). Questions regarding Mercado's involvement in the robbery tests more than Serrano's credibility and goes to the very heart of whether a jury could find Mercado guilty of the crime charged. Such subject matter, therefore, is not collateral.

■ Thus, the Court must address the second prong: Whether Serrano's refusal to answer questions concerning Mercado's involvement in the robbery "preclud[ed] inquiry into the details of [Serrano's] ... direct testimony." *Bagby v. Kuhlman,* 932 F.2d at 135; *see also, e.g., Dunbar v. Harris,* 612 F.2d at 693; *United States v. Berrio–Londono,* 946 F.2d 158, 160 (1st Cir.1991) (quoting *Turner v. Fair,* 617 F.2d at 10); *United States v. Zapata,* 871 F.2d at 623 (" 'When a witness' refusal to answer prevents defendant from directly

assailing the truth of the witness' testimony, the court should strike at least the relevant portion of the testimony.' ") (quoting *United States v. Humphrey,* 696 F.2d at 75); *United States v. Nunez,* 668 F.2d at 1122 (10th Cir.1981) (quoting *Cardillo*); *United States v. Gould,* 536 F.2d 216, 222 (8th Cir.1976) (citing *Cardillo*); *United States v. Cardillo,* 316 F.2d at 611; *Carmona v. State of New York,* 1997 WL 876737 at *12 (quoting *Bagby* ); *United States v. Badalamenti,* 1985 WL 3960 at *1. As the Second Circuit has explained, "a 'witness' invocation of the fifth amendment will not violate a defendant's right to confrontation *unless* 'the refusal precludes the defendant from testing the truth of the witness' prior testimony.' " *Bagby v. Kuhlman,* 932 F.2d at 137; *see also, e.g., United States v. Brooks,* 82 F.3d 50, 54 (2d Cir.1996). Thus, where the witness' refusal to answer questions on cross-examination does not shield his direct testimony from scrutiny, the Sixth Amendment does not require that the direct testimony be struck.

■ In the instant case, defense counsel had free reign to ask questions on cross-examination to challenge Serrano's account of the events leading up to the robbery, the robbery itself and the number of people involved.[5] Defense counsel used his cross-examination of Serrano to advance the defense theme that Mercado was not inside Balducci's during the robbery, and that there was another explanation for Mercado's fingerprints being found on the robbery proceeds.

Nevertheless, the unanswered questions concerning whether Mercado was one of the robbers go to the very heart of Serra-

---

**5.** While defense counsel apparently refrained from asking certain questions on cross-examination as a matter of strategy, it is well settled that the Sixth Amendment's Confrontation Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish." *Delaware v. Fensterer,* 474 U.S. 15, 21, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985); *accord, e.g., Unit-*

*ed States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988); *Pennsylvania v. Ritchie,* 480 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987); *Kentucky v. Stincer,* 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987); *United States v. Brooks,* 82 F.3d at 54; *Lee v. Harris,* 91 Civ. 6716, 1992 WL 247037 at * 3 (S.D.N.Y. Sept.16, 1992).

no's direct testimony, which described the events of the robbery, and implicitly assisted the prosecution in proving Mercado's guilt. The most effective cross-examination of Serrano would have been to get him to testify that Mercado was *not* one of the robbers. Mercado's main argument (indeed, only argument) is that "[h]ad Serrano stated that petitioner was not a participant, the damaging effect of his other testimony would have been undermined." (Petition ¶ 12(B), at supp. p. 5; *see also id.* at 6; Rieue Aff.Ex. D: Mercado 1st Dep't Br. at 32.) Without an answer to the question of Mercado's involvement in the crime, Mercado was deprived of a meaningful opportunity to test the truth of Serrano's testimony. This certainly is a case where "the answer would have been so closely related to the commission of the crime that the entire testimony of the witness should be stricken." *United States v. Cardillo,* 316 F.2d at 613.

**B.** *The Violation of Mercado's Confrontation Clause Rights Was Harmless Error*

█ The finding that Mercado's Sixth Amendment right to confront Serrano was violated, however, does not end the inquiry. It is settled law that "violations of the confrontation clause may, in an appropriate case, be declared harmless" error. *Klein v. Harris,* 667 F.2d 274, 290 (2d Cir.1981), *overruled on other grounds by Daye v. Attorney General,* 696 F.2d 186, 195 (2d Cir.1982); *see also, e.g., Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986) (harmless error applies to Confrontation Clause issue); *Yarborough v. Keane,* 101 F.3d 894, 896 (2d Cir.1996) (citing *Arizona v. Fulminante,* 499 U.S. 279, 307, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302 (1991)); *United States v. Aulicino,* 44 F.3d 1102, 1109 (2d Cir.1995) ("Testimony admitted over a defendant's valid Confrontation Clause objection, however, is subject to harmless-error analysis," citing *Delaware v. Van Arsdall*); *Tinsley v. Kuhlmann,* 973 F.2d 163, 165–66 (2d Cir.1992) (holding that any violation of defendant's confrontation rights was harmless); *Ojeda v. Artuz,* 96 Civ. 5900, 1997 WL 283398 at *5 (S.D.N.Y. May 29, 1997) ("Confrontation Clause violations are subject to harmless-error analysis.") (citing *Delaware v. Van Arsdall*).

In *Brecht v. Abrahamson,* the Supreme Court held that the appropriate harmless error standard to apply on habeas corpus review of trial errors is whether the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " 507 U.S. 619, 638, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *see also, e.g., O'Neal v. McAninch,* 513 U.S. 432, 439, 115 S.Ct. 992, 996, 130 L.Ed.2d 947 (1995); *Agard v. Portuondo,* 117 F.3d 696, 714 (2d Cir.1997); *Peck v. United States,* 106 F.3d 450, 454 (2d Cir. 1997); *Peck v. United States,* 102 F.3d 1319, 1320 (2d Cir.1996) (en banc) (Newman, C.J., concurring); *Glenn v. Bartlett,* 98 F.3d 721, 729 (2d Cir.1996), *cert. denied,* 520 U.S. 1108, 117 S.Ct. 1116, 137 L.Ed.2d 317 (1997); *Brewer v. Reynolds,* 51 F.3d 1519, 1529–30 (10th Cir.1995), *cert. denied,* 516 U.S. 1123, 116 S.Ct. 936, 133 L.Ed.2d 862 (1996); *Tyson v. Keane,* 991 F.Supp. 314, 316 (S.D.N.Y.1998) (Scheindlin, D.J. & Peck, M.J.); *James v. Senkowski,* 97 Civ. 3327, 1998 WL 217903 at *9 (S.D.N.Y. April 29, 1998) (Cote, D.J. & Peck, M.J.); *Boyd v. Hawk,* 965 F.Supp. 443, 445 (S.D.N.Y.1997).

In conducting a confrontation clause harmless error analysis, the Supreme Court and the Second Circuit have set forth the appropriate factors to consider:

In conducting this analysis, we must consider (1) how important the witness' testimony was to the prosecution's case, (2) whether the testimony was cumulative, (3) whether other evidence in the record corroborated or contradicted the witness on relevant matters, (4) whether other cross-examination of the witness was permitted and the extent of it, and

(5) *what effect the testimony would have on proof defendant's guilt.* *See Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d 674.

*Tinsley v. Kuhlmann,* 973 F.2d at 166 (emphasis added); *see also, e.g., Ojeda v. Artuz,* 1997 WL 283398 at *5.

The Court's finding of Confrontation Clause error in Point I.A. above was premised on the fact that if Serrano had responded that Mercado was not involved in the robbery, that would have significantly aided Mercado's defense. The fact is, however, that while the jury did not know how Serrano would have answered the questions about Mercado's involvement, the colloquy outside the jury's presence made clear that if he had answered, Serrano would have identified Mercado as one of the robbers. This is clear because Serrano's counsel repeatedly told the trial judge that Serrano would not "implicate" Mercado. (Tr. 775, 783, 865.) "Implicate" is not a neutral term. The dictionary defines it as "[t]o involve intimately or incriminatingly." [6] Significantly, moreover, the prosecutor advised the trial court during colloquy that in testifying before the grand jury, Serrano identified Mercado as one of the robbers. (Tr. 866–68.)

Mercado's case would have been hurt, not helped, if Serrano had answered the unanswered questions. Thus, the fifth *Tinsley* factor—"what effect the testimony would have on proof of defendant's guilt"—is the key factor. If Serrano had answered the questions as to Mercado's involvement, he would have testified that Mercado was one of the robbers, significantly increasing the likelihood the jury would find Mercado guilty. In other words, Mercado was better off, not hurt, by Serrano's refusal to answer the questions. On the peculiar facts of this case,

the Confrontation Clause violation was harmless error.

## II. THE TRIAL JUDGE'S RESPONSE TO THE JURY'S QUESTION WAS NOT ERRONEOUS UNDER NEW YORK LAW

Mercado also alleges that he was denied his right to fair notice of the charges pending against him and the right to be prosecuted only by grand jury indictment when, in response to a jury question, the trial judge allowed the jury to convict Mercado even if it concluded that he did not enter the store. (Petition ¶ 12(A).)

In New York, the "fact that an indictment accuses a defendant as a principal does not preclude his conviction as an accessory and a [jury] charge based on accessorial conduct is not grounds for reversal." *People v. Kimbrough,* 155 A.D.2d 935, 547 N.Y.S.2d 756, 756 (4th Dep't 1989); *see also e.g., People v. McEachin,* 188 A.D.2d 433, 591 N.Y.S.2d 1023, 1024 (1st Dep't 1992) (same); *People v. Duncan,* 46 N.Y.2d 74, 79–80, 412 N.Y.S.2d 833, 837, 385 N.E.2d 572 (New York law makes "no distinction between liability as a principal and criminal culpability as an accessory and the status for which the defendant is convicted has no bearing upon the theory of the prosecution."), *cert. denied,* 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979).. Therefore, even if the prosecution's original theory was that defendant was a principal, "there is no infirmity in defendant's conviction as an accomplice." *People v. Doles,* 165 A.D.2d 689, 564 N.Y.S.2d 15, 16 (1st Dep't 1990); *see also, e.g., People v. Liccione,* 63 A.D.2d 305, 407 N.Y.S.2d 753, 756–57 (4th Dep't 1978), *aff'd,* 50 N.Y.2d 850, 430 N.Y.S.2d 36, 407 N.E.2d 1333 (1980).[7] Thus, the trial court's supplemen-

---

6. American Heritage Dictionary of the English Language, New College Edition at 660 (1978); *see also, e.g.,* American Heritage Dictionary, Second College Edition at 646 (1982); Webster's Third New Int'l Dictionary at 1135 (1983).

7. In its brief the government claims that "[f]rom the inception of the case to closing summation, the People provided evidence consistent with the charges of robbery based on principal and accessorial liability." (Gov't Br. at 24.) The record does not support this contention. As noted in text, however, Mer-

tal instruction was consistent with New York law and did not violate defendant's right to a fair trial. *See, e.g., Brown v. Collins,* 937 F.2d 175, 182 (5th Cir.1991) ("we consistently have held in the context of federal trials that 'one who has been indicted as a principal may, on proper instructions, be convicted on evidence showing only that he aided and abetted the commission of the offense' "); *Tapia v. Tansy,* 926 F.2d 1554, 1560 (10th Cir.1991) ("The 'sufficiency of an indictment or information is primarily a question of state law.' ... Under [state] law, [defendant] had sufficient notice to be convicted on the accessory theory, even though the information did not charge him as an accessory.... [T]rial counsel's failure to argue lack of notice or to request a continuance to meet the allegedly new theory of liability at the time of the instruction's submission suggests that he was not surprised by the instruction ...").

## CONCLUSION

For the reasons set forth above, I recommend that Mercado's petition should be denied.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMEN- DATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Harold Baer, Jr., 500 Pearl Street, Room 2230, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any re-

cado's claim fails because New York law makes no distinction between lability as a principal or as an accessory.

The government also claims that because Mercado's counsel failed to object to the supplemental jury charge, the issue is unpreserved for habeas review. (Gov't Br. at

quests for an extension of time for filing objections must be directed to Judge Baer. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

23–24.) The flaw in this argument, however, is that the First Department reached the merits of this claim, and did not rule on procedural default grounds. *People v. Mercado,* 237 A.D.2d at 200, 655 N.Y.S.2d at 474. The issue therefore is appropriate for federal habeas review on the merits.